**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Hipolito RIVERA–RAMIREZ,**
**Defendant-Appellant.**

**No. 82–1387.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1983.

Decided Sept. 6, 1983.

Andres Alonso, Jr., Los Angeles, Cal., for plaintiff-appellee.

James P. Walsh, Jr., Los Angeles, Cal., for defendant-appellant.

Before HUG and CANBY, Circuit Judges, and RYAN,* District Judge.

HUG, Circuit Judge:

Hipolito Rivera-Ramirez appeals an order denying his Fed.R.Crim.P. 32(d) motion to withdraw his guilty plea. Because none of the asserted errors constitutes manifest injustice, the denial of the motion was not an abuse of discretion. We therefore affirm.

Rivera-Ramirez was indicted on one count of possession of cocaine with intent to distribute and one count of conspiracy. 21 U.S.C. §§ 841(a) and 846. He pleaded not guilty to these charges, but subsequently

---

* The Honorable Harold L. Ryan, United States District Judge for the District of Idaho, sitting by designation.

entered into plea negotiations with the United States Attorney prosecuting the case. Through his attorney, Rivera-Ramirez agreed to accept the plea agreement offered by the Government.

At a hearing on November 16, 1981, Rivera-Ramirez withdrew his plea of not guilty and announced his intention to plead guilty to both counts of the indictment. He was represented by counsel and also aided by an official court interpreter. The district judge read to Rivera-Ramirez the charges pending against him. The judge then questioned him as to his understanding of his trial rights and his satisfaction with his attorney's representation. Rivera-Ramirez responded that he understood each of his constitutional rights and that his plea was not the product of coercion, promises, or threats, but would be given freely and voluntarily. He acknowledged that the plea agreement he had entered into was based only on the Government's promise not to indict him on an additional charge, and that no representations had been made as to the sentence he would receive. He stated his understanding that the court "can give me a fifteen-year sentence for each charge and $25,000 fine for each," and was further advised of the possibility of a maximum lifetime special parole term and of an impact on his immigration status. The judge then explored the factual basis for the plea, accepting comments from Rivera-Ramirez, his attorney, and the prosecutor. Having found that the plea was knowing and voluntary and that a factual basis existed, the court accepted Rivera-Ramirez's plea of guilty to both counts. At a subsequent hearing, he was sentenced to the maximum penalty—two consecutive fifteen-year terms, a fine of $50,000, and a lifetime special parole term.

Several months later Rivera-Ramirez obtained new counsel. On May 17, 1982, he filed a motion under Fed.R.Crim.P. 32(d) for leave to withdraw his guilty plea. He contended his plea hearing had been conducted in violation of Fed.R.Crim.P. 11 and various constitutional provisions. Following a hearing, the district court denied the motion, and Rivera-Ramirez appeals the refusal to permit withdrawal of the plea.

Rivera-Ramirez's primary contention on appeal is that the district court failed to comply with the requirement of Rule 11(c)(1) that the court "address the defendant personally in open court and inform him of, and determine that he understands, ... the nature of the charge to which the plea is offered ...." Specifically, Rivera-Ramirez argues that, following the reading of the indictment, the court was obligated to explain further the terms "conspiracy" and "possession" and to inquire as to Rivera-Ramirez's understanding of these terms. He contends that the court's failure to satisfy the formal requirements of Rule 11 invalidated his guilty plea.

These claims require us to determine what burden a defendant bears in asserting a claim under Rule 32(d). Rule 32(d) provides:

> A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

In *McCarthy v. United States,* 394 U.S. 459, 472, 89 S.Ct. 1166, 1174, 22 L.Ed.2d 418 (1969), the Supreme Court, in reviewing a judgment on direct appeal, held that a defendant whose plea was accepted in technical violation of Rule 11 was entitled to have the plea set aside and to plead anew. Until recently there was considerable question as to whether a technical violation of Rule 11 entitled the defendant to have the plea set aside in a collateral proceeding under 28 U.S.C. § 2255 or under Fed.R.Crim.P. 32(d).

The Supreme Court in *United States v. Timmreck,* 441 U.S. 780, 784–85, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979), held that a technical violation of Rule 11 would not support a collateral attack under section 2255 on a conviction based on a guilty plea, where there was no showing of constitutional error or special prejudice. After *Timmreck,* we held that collateral relief

was not available when all that was shown was a failure to comply with the formal requirements of Rule 11. *United States v. Lopez-Beltran,* 619 F.2d 19, 20 (9th Cir. 1979).[1]

■ We emphasize that Rivera-Ramirez did not directly appeal the judgment of conviction in this case by filing a notice of appeal within the ten-day requirement of Fed.R.App.P. 4(b), as was the case in *McCarthy,* nor did he file his Rule 32(d) motion within that ten-day period. Instead, he attacked the judgment several months later under Rule 32(d). Under those circumstances, his motion amounts to a collateral attack and he must meet the burdens imposed upon a defendant who seeks to set aside his plea in collateral proceedings. *See United States v. Watson,* 548 F.2d 1058, 1063 (D.C.Cir.1977); *United States v. Laura,* 500 F.Supp. 1347, 1355 (E.D.Pa.1980); *see also* Borman, *The Hidden Right to Direct Appeal from a Federal Plea Conviction,* 64 Cornell L.Rev. 319, 327 (1979).

■ Section 2255 and Rule 32(d) provide alternate routes to set aside a guilty plea collaterally. Under section 2255 it is clear that claiming a technical violation of Rule 11 is insufficient. Instead, the defendant's burden is to establish a constitutional or jurisdictional error, or that the proceeding in which his plea was accepted was "inconsistent with the rudimentary demands of fair procedure" or resulted in a "complete miscarriage of justice." *Timmreck,* 441 U.S. at 783–84, 99 S.Ct. at 2087 (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). It must also be claimed that the procedural error prejudiced the defendant in that he was actually unaware of the consequences of his plea decision and, if properly advised,

would not have pleaded guilty. *Id.; see United States v. Crook,* 607 F.2d 670, 672 (5th Cir.1979); *United States v. Horsley,* 599 F.2d 1265, 1269 (3d Cir.) (en banc), *cert. denied,* 444 U.S. 865, 100 S.Ct. 135, 62 L.Ed.2d 88 (1979); *Alessi v. United States,* 593 F.2d 476, 478 (2d Cir.1979), *cert. denied,* 451 U.S. 937, 101 S.Ct. 2015, 68 L.Ed.2d 323 (1981).

■ A Rule 32(d) motion filed after the time for appeal has expired is also collateral in nature, and the strict standard of *McCarthy* does not apply. Instead, the provisions of Rule 32(d) require that "manifest injustice" be found.

It has been suggested that Rule 32(d) and section 2255 standards lead to identical results. *See* C. Wright, 3 *Federal Practice and Procedure* § 539 at 211 & n. 11 (2d ed. 1982); *cf. Watson,* 548 F.2d at 1063. The section 2255 standard is supported by concern for judicial economy and the finality of judgments. *Timmreck,* 441 U.S. at 784, 99 S.Ct. at 2087. We have held that a Rule 32(d) motion invokes similar considerations:

> "[I]f a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process."

*Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir.1963) (emphasis and footnote omitted).

■ We need not, however, determine in this case whether the section 2255 standard applied in *Timmreck* is identical for all purposes to the manifest injustice standard of Rule 32(d).[2] It is sufficient to hold in this

---

1. That case involved a motion to dismiss an indictment under 8 U.S.C. § 1325 for illegal entry, in which the alien contended that a prior conviction was invalid because of a failure to comply with Rule 11 in accepting the guilty plea.

2. The question of the degree of the overlap between section 2255 and Rule 32(d) was also

left open by this court in *United States v. Harris,* 534 F.2d 141 n. 1 (9th Cir.1976). Our holding does not foreclose the possibility that some circumstances, not present in the instant case, might constitute "manifest injustice" without amounting to a violation of due process or another fundamental right. *See* J. Moore, 8A *Moore's Federal Practice* ¶ 32.07[4] (2d ed. 1978); Borman, *The Hidden Right to Direct*

case that violation of the formal requirements of Rule 11 alone does not constitute manifest injustice. It is our view that *United States v. Cantor,* 469 F.2d 435, 437 (3d Cir.1972), cited by appellant, which holds to the contrary, has been undermined by *Timmreck*.[3] We thus review the procedure followed under Rule 11 to determine not whether there was a technical violation, but whether manifest injustice resulted.

■ Rivera-Ramirez claims that he was not adequately advised of the charges against him. Although Rule 11(c) requires the district court to inform the defendant of the nature of the charges against him, no specific method of advising the defendant is mandated. *See* Fed.R.Crim.P. 11 Advisory Committee Note on 1974 Amendment; *Mack v. United States,* 635 F.2d 20, 25 (1st Cir.1980). The information provided the defendant is sufficient if it provides him "an understanding of the law in relation to the facts" and thus permits a voluntary plea. *McCarthy,* 394 U.S. at 466, 89 S.Ct. at 1170. In this case, the district court read the two counts of the indictment to Rivera-Ramirez, and then asked whether those were the charges to which he wished to plead guilty. The indictment read by the judge was unique in that it was unusually factually detailed. Although we do not suggest that reading the indictment will in most instances satisfy the requirements of Rule 11, we conclude that the procedure adopted here did not result in manifest injustice. The detailed indictment allowed Rivera-Ramirez, aided by his attorney and an interpreter, to understand the charges against him. Moreover, Rivera-Ramirez has made no showing that he was prejudiced by the court's failure to further explain the charges. He did not claim, at the hearing on his motion to withdraw the plea or in his affidavit submitted to the district court, that he did not understand the

charges or that, better advised, he would not have pleaded guilty.[4] The record of the plea hearing does not support the inference that Rivera-Ramirez did not comprehend what transpired. For these reasons, the district court correctly determined that the failure to explain the charges did not cause Rivera-Ramirez to suffer manifest injustice, and the refusal to permit withdrawal of the plea on this basis was not an abuse of discretion.

■ Rivera-Ramirez also argues that there was not a sufficient factual basis for the plea. Rule 11(f) requires the court to explore the factual basis in order to determine the accuracy of the plea. *United States v. Barker,* 681 F.2d 589, 592 (9th Cir.1982). The rule prescribes no specific method of establishing the factual basis. *See* Fed.R.Crim.P. 11 Advisory Committee Note on 1974 Amendments. However, it must be established on the record that there is sufficient evidence to support the conclusion that the defendant is guilty. *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *United States v. Neel,* 547 F.2d 95, 96 (9th Cir. 1976).

The district court first elicited a statement from Rivera-Ramirez, who admitted to working as a mechanic on vehicles that he knew were used in drug transactions. When the prosecutor was asked to supplement this statement, he noted Rivera-Ramirez had been "unduly modest," and had, in fact, held a prominent role in a very large-scale drug distribution conspiracy. In support of this contention, the prosecutor specified that the conspiracy was based in four apartments in a complex in Van Nuys, California, and that Rivera-Ramirez had rented at least two of the apartments. In an authorized search of these apartments,

---

*Appeal From a Federal Plea Conviction,* 64 Cornell L.Rev. 319, 333 & n. 81 (1979).

**3.** *Timmreck* also reserved the question whether a technical violation could be a basis for collateral relief if it "occurred in the context of other aggravating circumstances." 441 U.S. at 784–85, 99 S.Ct. at 2087–88.

**4.** Rivera-Ramirez's attorney argued before the district court that a person in Rivera-Ramirez's situation would have difficulty understanding the charges against him. Argument is not evidence of the defendant's subjective understanding, and thus does not establish prejudice.

agents of the Drug Enforcement Agency recovered 113.5 pounds of cocaine and approximately $2,000,000 in currency. They also seized a money-counting machine, weapons, and ledgers in which the details of the operation were recorded. The ledgers revealed distribution of over 3,600 pounds of cocaine, which yielded $73,000,000. The ledgers also identified the head of the conspiracy .as ` "HTO." Because Rivera-Ramirez's true name is Humberto, because he was arrested in the apartment designated as headquarters of the operation, and because he had obtained vehicles and apartments for the conspirators' use, the prosecutor inferred that Rivera-Ramirez was HTO. The ledgers indicated HTO's personal involvement in the conspiracy on numerous occasions, including trips to Miami to obtain cocaine and distribution to local dealers in Van Nuys.

■ Neither Rivera-Ramirez nor his attorney commented directly on this evidence, but in response to the court's questions, Rivera-Ramirez admitted he had transported a substance he knew to be cocaine. He also admitted he knew the apartment in which he was arrested contained cocaine, and that he knew of no reason why his plea to the charges of conspiracy and possession with intent to distribute should not be accepted.

Within the context of this hearing, we consider this factual development to be minimally adequate. A more direct response from the defendant to the prosecutor's statements, and more detailed questioning of the defendant, definitely would have been preferable.[5] However, because nothing on the record places the accuracy of the plea in doubt, the failure to develop a fuller record did not result in manifest injustice.

■ We address only briefly Rivera-Ramirez's remaining contentions, which are without merit.[6] He argues Rule 11(c)(1) was violated in that he was not advised of the minimum possible special parole term he might be required to serve. Because he was advised that Count Two required a special parole term, that it might be a life term, and that it would convert to a life term in prison if the parole terms were violated, no possible prejudice could have resulted from this technical error.[7]

■ Rivera-Ramirez contends his attorney misinformed and misled him in negotiating and tendering his plea and, in general, provided ineffective assistance. He stated at the plea hearing, however, that he was satisfied with the representation he had received. He also avowed his understanding of each of the rights he now contends were erroneously defined by his attorney. These solemn declarations made in open court carry a strong presumption of verity. *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *United States v. Moore,* 599 F.2d 310, 314 (9th Cir.1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980). The district court rejected Rivera-Ramirez's after-the-fact statements to the contrary. Because the assertions that the attorney had misled him are without support in the record, the court's credibility judgments were proper. *See United States v. Degand,* 614 F.2d 176, 178 (8th Cir.1980); *United States v. Becklean,* 598 F.2d 1122, 1125–26 (8th Cir.), *cert. denied,* 444 U.S. 864, 100 S.Ct. 135, 62 L.Ed.2d 87 (1979).

---

**5.** The limitations on the factual development of this record resulted in part from tactical decisions by Rivera-Ramirez and his attorney. When Rivera-Ramirez was asked if he disagreed with any part of the prosecutor's supplemental statement, his attorney interjected that Rivera-Ramirez wished to admit his guilt "in a manner that would least inculpate himself and other people." The attorney urged the court to accept the plea on the basis of the limited factual development and to rely instead on the presentence report.

**6.** Rivera-Ramirez also asserts a challenge to his sentence and a claim that denying his new attorney access to the presentence report violated due process. Neither of these contentions is properly before this court on review of a Rule 32(d) motion.

**7.** The prosecutor did state at the hearing that the court would be obliged to impose a minimum three-year special parole term on Count Two.

Rivera-Ramirez asserts the prosecutor did not reveal the full terms of the plea agreement to the court. He and his counsel expressly stated at the plea hearing that the agreement had been fully disclosed. His later statements to the contrary are without support.

The order denying leave to withdraw the guilty plea is AFFIRMED.