32 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Enrique CARMARGO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carlos Arturo QUIJANO, Defendant-Appellant.
 Nos. 93-10306, 93-10312.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 13, 1994.
Decided Aug. 3, 1994.
 
 1
 Before: WALLACE, Chief Judge, WIGGINS, Circuit Judge, TURRENTINE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 Enrique Carmargo and Carlos Arturo Quijano were convicted of (1) conspiracy to possess with intent to distribute cocaine and (2) distribution of cocaine and aiding and abetting. Carmargo and Quijano appeal several of the district court's trial and sentencing rulings. We affirm.
 
 DISCUSSION
 1. Duress Instruction
 
 4
 Carmargo contends the district court erred in refusing to give an instruction on duress.
 
 
 5
 A defendant is not entitled to a duress instruction unless he establishes a prima facie case of three elements:
 
 
 6
 (1) an immediate threat of death or serious bodily injury;
 
 
 7
 (2) a well-grounded fear that the threat will be carried out; and
 
 
 8
 (3) lack of a reasonable opportunity to escape the threatened harm.
 
 
 9
 United States v. Becerra, 992 F.2d 960, 964 (9th Cir.1993). "Fear alone is not enough to establish a prima facie case of duress...." Id.
 
 
 10
 Carmargo testified as follows in support of his duress defense: Carmargo lived with Mink in Las Vegas for six to eight weeks, through May of 1992. He moved out because Mink threw his (Carmargo's) property out onto the street and told him that, if he would not obtain drugs, he had to leave. About October 6, 1992, Mink, at that time a government informant, visited Carmargo with McConnell, an undercover DEA agent. Mink said McConnell had money and wanted to buy drugs. Mink told Carmargo if no drugs were produced, "something might happen to you or something to your wife or ... daughter." Mink told Carmargo not to make Mink look bad in front of McConnell. Mink repeated his threat.
 
 
 11
 In the days following, Mink continued to pressure Carmargo. Mink would call from 6:00 in the morning until 12:00 at night. Carmargo eventually refused to answer the phone or the door. Mink finally told Carmargo, "[I]f you don't do this today or the next day something's going to happen to you." Carmargo did not tell his probation officer or the police because he was confused and in fear for his life and family. Carmargo did not leave town because he did not have enough money. Having lived with Mink, Carmargo thought Mink was capable of carrying out his threats. Mink was drunk a lot, and Carmargo's family was home alone often. On the day of the drug transaction, Carmargo asked Quijano to come over and protect him.
 
 
 12
 The district court held that Carmargo had a reasonable opportunity to escape. Carmargo contends he did not, citing United States v. Contento-Pachon, 723 F.2d 691 (9th Cir.1984). In Contento-Pachon, this court held that a defendant had no reasonable opportunity to escape because the Bogota, Colombia, police were corrupt and to escape the reaches of drug traffickers the defendant would have had to pack, leave his job, and travel with his wife and three-year-old child.
 
 
 13
 The government argues that the district court was correct, citing Becerra. In Becerra, O'Donnell, an undercover agent, threatened to "take care of" LaRizza's family. LaRizza did not go to the police because he feared for his family. LaRizza thought O'Donnell was a mafioso. O'Donnell pestered LaRizza constantly for some months. This court held that LaRizza had an opportunity to escape. 992 F.2d at 964.
 
 
 14
 The government notes that Carmargo's discussions with Mink and McConnell took place over a two week period. Carmargo never contacted the police or his probation officer. Nor did he change his telephone number. Carmargo did not leave town. Nor did Carmargo attempt to move himself or his family elsewhere in Las Vegas; in fact, he took his family with him when he met Mink and McConnell.
 
 
 15
 We affirm. This court has not conclusively decided whether an abuse of discretion or de novo standard of review applies to a district court's refusal of a proposed jury instruction. Becerra, 992 F.2d at 963. We would affirm regardless of the standard employed, however; therefore, we need not resolve this issue.
 
 
 16
 In United States v. Charmley, 764 F.2d 675 (9th Cir.1985), we held that the defendant failed to show the absence of a reasonable opportunity to escape because he "was not under restraint or surveillance at the time of the robberies, and he failed both to notify authorities of the threats and to surrender when he had the opportunity." Id. at 676-77 (citations omitted). For reasons noted by the government, Carmargo is more like the defendant in Charmley and like LaRizza in Becerra than like the defendant in Contento-Pachon. Contento-Pachon is also distinguishable because in that case reliance on corrupt police may have been futile; here there is no evidence of police corruption. Carmargo's only excuse for not going to the police or his probation officer is fear. As in Becerra, "[f]ear alone is not enough." 992 F.2d at 964.
 
 2. Carmargo's 1991 California Conviction
 
 17
 In 1991, Carmargo pleaded guilty in California state court to transporting over three pounds of cocaine, in violation of Cal.Health & Safety Code Secs. 11352 & 11370.4(a) (1991). Relying on this prior conviction, the district court increased Carmargo's sentence substantially.
 
 
 18
 Carmargo contends that the district court erred in relying on the state conviction. Specifically, Carmargo claims that his guilty plea had no factual basis. See McCarthy v. United States, 394 U.S. 459, 467 (1969) (holding that the trial court must "satisfy himself that there is a factual basis for the plea"). Carmargo contends, citing 21 U.S.C. Sec. 851(c) (outlining what evidence the government must show to justify district court reliance on a prior conviction), that the government failed to produce sufficient evidence of a factual basis. Finally, Carmargo asserts that a plea without a factual basis is not voluntary, see McCarthy, 394 U.S. at 466-67, and that an involuntary plea is unconstitutional, see Boykin v. Alabama, 395 U.S. 238, 242 (1969). For these reasons, Carmargo concludes that his guilty plea was unconstitutional.
 
 
 19
 Carmargo claims that he pleaded guilty not because he was guilty but only because the plea allowed him to be released on probation. Carmargo also contends that neither the plea hearing transcript nor any other document submitted to the district court shows a factual basis. Carmargo claims his probation report, which would generally provide a factual basis for a guilty plea, had not been prepared when Carmargo pleaded guilty.
 
 
 20
 In rebuttal, the government points out that a trial judge may accept a plea of guilty coupled with a protestation of innocence provided the record shows a strong factual basis for the plea. North Carolina v. Alford, 400 U.S. 25, 33-38 (1970); United States v. Neel, 547 F.2d 95, 96 (9th Cir.1976). "The court need not be convinced beyond a reasonable doubt that an accused is guilty. It need only be convinced that there is sufficient evidence to justify the reaching of such a conclusion." Neel, 547 F.2d at 96. Moreover, the factual basis need not come from the defendant's statements. Alford, 400 U.S. at 28, 38-39 (approving a factual basis shown only by an officer's and other witnesses' testimony).
 
 
 21
 In this case, Carmargo claimed to be innocent at the time he pleaded guilty. The state trial court did not accept the plea at that time, however, but accepted the plea later, at the time of sentencing, after the probation report had been filed. The court at this later date found a factual basis for the plea in the probation report. The report, in turn, was based in part on testimony set forth in the preliminary hearing transcript. When requesting that he be allowed to change his plea, Carmargo agreed that the court could consider the preliminary hearing transcript and probation report as proof of a factual basis for his plea.
 
 
 22
 Those two documents outlined a factual basis for Carmargo's guilty plea, as follows. The documents stated that a drug buyer, Waters, while standing on the street in front of a restaurant, received a page. Carmargo had a pager at the time. After being paged, Waters waived to a passing white Ford Taurus. The Taurus stopped, and Carmargo, a passenger, exited and shook Waters's hand. Carmargo entered the restaurant with the Taurus driver and another. Then Waters opened the Taurus trunk and retrieved a bag later found to contain over two kilos of cocaine. Later, Carmargo's companion inside the restaurant was heard to say, "They'll be back," or, "They're coming back, just relax." Carmargo and his companions were later arrested at the restaurant. Carmargo's codefendant, the driver of the Taurus, stated that the cocaine belonged to Carmargo. The driver said he was driving Carmargo only because Carmargo's license was suspended. Carmargo also made a false exculpatory statement. The government contends that this evidence is sufficient to establish a factual basis for the plea.
 
 
 23
 We affirm. Under 21 U.S.C. Sec. 851(c)(2) and the sentencing guidelines, the defendant, not the government, shoulders the burden of proving that a conviction was invalid because the guilty plea underlying it was involuntary. United States v. Newman, 912 F.2d 1119, 1121 (9th Cir.1990) (sentencing guidelines). A district court's determination that a plea was voluntary is reviewed de novo. United States v. Butcher, 926 F.2d 811, 817 (9th Cir.), cert. denied, 500 U.S. 959 (1991). Whether a plea (used to enhance a sentence) had a factual basis is reviewed to determine whether it was supported by sufficient evidence. United States v. Rivera-Ramirez, 715 F.2d 453, 457 (9th Cir.1983), cert. denied, 467 U.S. 1215 (1984). In this case, the plea was valid under Alford and Neel for reasons noted by the government. See also Rivera-Ramirez, 715 F.2d at 457-58 (affirming that a guilty plea had a factual basis, relying in part on statements made by the prosecutor to the trial court). The documents cited by the government, all of which were before the trial court when the court finally accepted the guilty plea, justify the conclusion that Carmargo culpably violated the California narcotics laws at issue. Moreover, Carmargo agreed that those documents could be used. Surely he knew that the documents would give a factual basis for the plea.[1]
 
 3. Quijano's Telephone Number
 
 24
 After Quijano was arrested, he was "booked." As part of the booking process, Quijano was required to give his phone number. Quijano gave a number. A deputy U.S. marshal wrote that number on the booking form. At trial, the government submitted as evidence the number and the form. The government also submitted phone records for this number and called witnesses to testify that numerous phone calls were made between the number and Las Vegas during the eight-week period immediately prior to the commission of the crime.
 
 
 25
 Quijano argues that the telephone number was inadmissible. He claims that the number was an incriminating statement made in response to a custodial interrogation conducted without Miranda warnings. See Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). Three of four subissues latent in Quijano's claim are largely undisputed. The phone number was an incriminating statement--one "that the prosecution may seek to introduce at trial." See Rhode Island v. Innis, 446 U.S. 291, 301 n. 5 (1980) (emphasis in original). Quijano was in custody when booked. And Quijano denies he was given Miranda warnings prior to being booked. Thus, the only issue remaining is whether requiring Quijano to answer the question regarding his phone number was "interrogation." The district court held it was not.
 
 
 26
 Generally, questioning is "interrogation" when, "under all circumstances involved in a given case, the questions are 'reasonably likely to elicit an incriminating response from the suspect.' " United States v. Poole, 794 F.2d 462, 465-66 (9th Cir.) (quoting United States v. Booth, 669 F.2d 1231, 1237 (9th Cir.1981) (quoting in turn Innis, 446 U.S. at 301)), amended, 806 F.2d 853 (1986). The test is objective; "the subjective intent of the police, while relevant, is not conclusive." Booth, 669 F.2d at 1238. Quijano claims as follows in support of his argument that the question in this case was interrogation: Officers knew Quijano had been arrested for distribution of cocaine, that Quijano was not from Las Vegas, and that drug cases often involve telephones, pen registers, wiretaps, and long distance telephone records.[2]
 
 
 27
 In response, the government notes that generally the "[r]outine gathering of background biographical data does not constitute interrogation." United States v. Perez, 776 F.2d 797, 799 (9th Cir.1985); Booth, 669 F.2d at 1238. The government concedes, however, that this exception to the Miranda rule is fact-specific. The relationship of the question asked to the crime suspected is relevant. Booth, 669 F.2d at 1238 (holding that asking a suspect his name, age, and address were not interrogation but that asking for his prior arrest record and his reasons for being in the area were).
 
 
 28
 We affirm. "The determination whether a defendant was subjected to custodial interrogation is essentially factual, and is reviewable under the 'clearly erroneous' standard." Booth, 806 F.2d at 853. In this case, as the government notes, the marshal asked Quijano only the questions on the form. The marshal was not involved in the DEA investigation of Quijano. The marshal was unaware of the significance of the responses. The questions were routine and asked of all suspects. The district court did not abuse its discretion in finding that no interrogation had taken place.
 
 4. Ineffective Assistance of Counsel
 
 29
 Quijano claims he was denied effective assistance of counsel at trial. This issue is reviewed de novo. United States v. Roberts, 5 F.3d 365, 370 (9th Cir.1993). Quijano must show that his counsel's performance was deficient and that his defense was thereby prejudiced. Id. Quijano's original counsel was allowed to withdraw on November 18, 1992, on condition that new counsel be appointed without extending the December 7, 1992, trial date. (The trial court did allow a one-week extension in order to consider pretrial motions, however.) Trial counsel Cal Potter was appointed November 24, and trial began December 14, 1992.
 
 
 30
 Quijano contends this "rush to judgment" resulted in a number of defects in Potter's representation: failure to request a continuance after a superseding indictment was filed on December 2, 1992; filing a motion to suppress post-arrest statements without much or any consultation with Quijano; failure to become familiar with evidence and exhibits, including telephone records; asking no or only a few questions of witnesses (1) Lawrence Hill, (2) Sally Varao of the phone company, (3) Shoemaker, the deputy marshal who booked Quijano, and (4) Mike Abbot; failure to advise Quijano of the potential difference in penalties resulting from a plea as opposed to a verdict of guilty (Quijano contends that, had he pleaded guilty, he might have obtained a 3-point reduction for acceptance of responsibility); and refusing to request that Mink be examined or called as a witness. Quijano contends Mink might have helped Quijano show that he was only a courier and not a source of the cocaine.
 
 
 31
 In response, the government contends that Potter performed within professional bounds. The government notes that Hill and Varao merely authenticated phone records. Shoemaker merely authenticated a booking document. None of this testimony was controversial or crucial. Abbott's testimony relates only to Carmargo. Abbott neither mentions nor implicates Quijano. The government notes that no defendant called Mink. The government claims Quijano had no reason to call Mink. McConnell testified regarding Mink's remuneration and motives. And in closing argument, Potter noted Mink's absence and argued that anything Mink was involved in would not be entirely credible.
 
 
 32
 As to Potter's alleged failure to advise Quijano that he might get an acceptance of responsibility reduction for pleading guilty, the government claims that the reduction for acceptance of responsibility that Quijano wanted was available even though he went to trial. See U.S.S.G. Sec. 3E1.1 app. n. 2 (1992). Finally, the government contends that Quijano has not shown prejudice.
 
 
 33
 We affirm. Potter justifiably declined to seek a continuance. The original indictment alleged a conspiracy beginning October 8, 1992. The superseding indictment merely changed this date to October 6, 1992. That change did not warrant a continuance on Quijano's behalf. Aside from possible phone calls between Quijano and Carmargo throughout September and October, Quijano did not appear in the conspiracy until the day of the drug transaction, October 19th.
 
 
 34
 Potter was not ineffective for failing to ask many questions of Hill, Varao, Shoemaker, and Abbott, for reasons noted by the government. Moreover, Quijano has not indicated what these witnesses might have said in his favor; thus, he has shown no prejudice from Potter's failure to examine them. United States v. Berry, 814 F.2d 1406, 1409 (9th Cir.1987) (holding no prejudice resulted from failure to call witnesses when defendant failed to show what the witnesses would have testified). For similar reasons, we decline to find ineffective assistance in Potter's filing of the suppression motion without consulting Quijano. As noted infra, part 5, Quijano has waived his right to protest the district court's refusal to disallow the evidence Quijano wanted suppressed. Quijano is therefore not prejudiced by his counsel's failure to seek his advice prior to filing the suppression motion.
 
 
 35
 Potter was not ineffective for failing to advise Quijano to plead guilty in order to obtain a reduction for acceptance of responsibility. Quijano continued to contest factual guilt at the time of sentencing, even though his counsel argued that Quijano had made some statements that would warrant a finding that Quijano had admitted guilt. In such a circumstance, it seems unlikely that Quijano would have obtained a reduction even if he had pleaded guilty. See U.S.S.G. Sec. 3E1.1. Moreover, the decision to go to trial, particularly when Quijano asserted innocence, was not incompetent. Also, pleading guilty does not automatically warrant a reduction. And the government is correct that merely going to trial does not foreclose a reduction for acceptance of responsibility. United States v. McKinney, 15 F.3d 849, 853-55 (9th Cir.1994); United States v. Johnson, 956 F.2d 894, 904-05 (9th Cir.), amended sub nom. United States v. Emelio, 969 F.2d 849 (1992); see United States v. Hill, 953 F.2d 452, 461 (9th Cir.1991). For these reasons, we find unpersuasive Quijano's argument that Potter should have advised him to plead guilty.
 
 
 36
 We decline to review other assertions of ineffectiveness. It is impossible to decide on the present record whether or why Potter was unfamiliar with trial exhibits and evidence and what trial strategy prompted Potter not to examine Mink. Thus, the instant appeal is not the proper place to examine these issues. United States v. Molina, 934 F.2d 1440, 1449 (9th Cir.1991) (declining to review on direct appeal whether failure to investigate certain allegations and certain witnesses was ineffective, because the record did not show whether counsel made some efforts and why further investigation did not take place).
 
 
 37
 5. Denial of Motion to Reconsider Suppression of Post-Arrest Statements
 
 
 38
 Quijano filed a motion for a suppression hearing regarding whether his post-arrest waiver of Miranda rights was voluntary. Quijano wanted post-waiver statements suppressed. The district court denied the motion because Quijano failed to allege facts warranting a hearing. Quijano filed a motion to reconsider.
 
 
 39
 The record is unclear regarding the disposition of the reconsideration motion. The parties represent that the reconsideration motion was denied. Yet the record shows that the district court intended to grant the motion "unless entrapment is a defense." Though Carmargo argued entrapment, Quijano did not. Moreover, the post-arrest statements that Quijano wanted suppressed are not inconsistent with Carmargo's entrapment defense. Therefore, the motion may have been granted. But the district court clerk noted on the docket that the motion was "moot." Given the state of the record, we are unable to determine how the district court disposed of the motion. The parties agree that no hearing took place, however. (The jury had already been empaneled when the court disposed of the motion.) The parties also agree that the government never used the post-arrest statements at trial.
 
 
 40
 Notwithstanding the state of the record, we affirm. Quijano's only argument on appeal relating to the suppression motion is that the district court's failure to hold a hearing and decide the suppression motion in Quijano's favor "served to preclude [his] Fifth Amendment right to testify on his own behalf." The basis for this assertion, presumably, is that Quijano's fear that the government would introduce his post-arrest statements to impeach his testimony was sufficiently well-founded to amount to a constructive denial of Quijano's right to testify.[3]
 
 
 41
 We find that Quijano waived his right to protest the district court's refusal to disallow Quijano's post-arrest statements. Two cases lead to this conclusion: United States v. Behanna, 814 F.2d 1318 (9th Cir.1987), and United States v. Bagley, 837 F.2d 371 (9th Cir.), cert. denied, 488 U.S. 924 (1988). The Behanna court held as follows:
 
 
 42
 [The defendant] ... argues that the district court erred in ruling that certain evidence could be used to impeach him if he took the stand. Because he did not take the stand, however, he is not entitled to a review of that question.
 
 
 43
 814 F.2d at 1321. Bagley is similar. Bagley was convicted of, inter alia, dealing firearms without a license. Bagley had one prior felony conviction. Bagley alleged that fear that the government would impeach him with his prior felony kept him from testifying in his own behalf. This court rejected that claim:
 
 
 44
 Bagley did not attempt to take the stand during his trial, so his assertion is speculative. To preserve an issue for review requires an offer of proof and the making of a record.
 
 
 45
 ....
 
 
 46
 ... Bagley's claim that he did not testify at his firearms trial because the Government could have impeached him with his narcotics conviction fails to state grounds upon which relief can be granted. A defendant must claim the right to testify by attempting to take the stand, or this right is waived.
 
 
 47
 Id. at 375-76.
 
 
 48
 The instant case is indistinguishable from the facts in Behanna. Moreover, as in Bagley, Quijano's assertion that the government would have impeached him had he testified is speculative. Further, no offer of proof or record of what Quijano would have testified has been shown to the court. And Quijano did not take the stand. Therefore, like the defendant in Bagley, Quijano has waived his right. See also United States v. Johnson, 903 F.2d 1219, 1222 (9th Cir.), cert. denied, 498 U.S. 985 (1990).
 
 6. "Other Acts" Evidence
 
 49
 The district court allowed DEA agent McConnell to testify, "[Quijano] told me about a week and a half to two weeks prior to th[e] date [of the crime of conviction] he had transported ten kilos of coke to Las Vegas and it was [sic] sold." Quijano made this statement to McConnell while Quijano, Carmargo, and McConnell were waiting in the parking lot of Carmargo's apartment complex for the cocaine to arrive. Transportation and sale of these other kilos were not part of the acts charged in the indictment. Quijano asserts that this testimony was admitted in violation of Fed.R.Evid. 404(b) and 403.
 
 
 50
 In response, the government notes that Quijano did not object in the district court to the admission of this evidence. Therefore, admission is reviewed for plain error. Fed.R.Evid. 103(d); United States v. Khan, 993 F.2d 1368, 1376-77 (9th Cir.1993); see United States v. Gomez-Norena, 908 F.2d 497, 500-01 (9th Cir.), cert. denied, 498 U.S. 947 (1990). "A plain error is a highly prejudicial error affecting substantial rights." Gomez-Norena, 908 F.2d at 501 (quotation attributions omitted).
 
 
 51
 The government also claims that the evidence was properly admitted because it formed part of the background and circumstances of the offense. "Evidence should not be considered 'other crimes' evidence when the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined." United States v. Williams, 989 F.2d 1061, 1070 (9th Cir.1993) (quotation attributions omitted); United States v. Soliman, 813 F.2d 277, 279 (9th Cir.1987); see United States v. Dunn, 946 F.2d 615, 617-18 (9th Cir.) (holding evidence of drug dealing admissible in prosecution for possession of a weapon, in part because the evidence corroborated other evidence and explained an integral part of the circumstances of the crime), cert. denied, 112 S.Ct. 401 (1991). The government argues that Quijano's statement was made during the course of the charged conspiracy, was part of the same criminal episode, provided the jury with background and context for the crimes, and related to Quijano bringing cocaine to Las Vegas from California generally. Moreover, Quijano's statement was made in the course of setting up further drug deals with McConnell.
 
 
 52
 The government also argues that the evidence was admissible under Fed.R.Evid. 404(b) to establish knowledge, intent, or modus operandi. As to intent and knowledge, the government asserts that the evidence was admissible under Ninth Circuit law because Quijano's commission of the other act (1) tended to show an element of the offense (intent, willfulness, or mens rea), (2) was similar to the offense charged, (3) was sufficiently shown by Quijano's admission, (4) was not remote in time, and (5) was so probative as to outweigh any prejudice resulting. See United States v. Rubio-Villareal, 927 F.2d 1495, 1503 (9th Cir.1991) (requiring that other acts admitted to show intent or knowledge meet substantially these prerequisites), vacated in part on other grounds, 967 F.2d 294 (1992); United States v. Sarault, 840 F.2d 1479, 1485 (9th Cir.1988) (same).
 
 
 53
 Even if this court assumes that admission of the statement was error, the government argues, the error was not highly prejudicial given the overwhelming evidence showing Quijano's guilt. See United States v. Gomez-Gallardo, 915 F.2d 553, 556-57 (9th Cir.1990) (refusing to reverse the admission of other acts evidence because the evidence was not highly prejudicial and therefore not plain error). We affirm the introduction of this evidence for reasons given by the government. No plain error occurred.
 
 
 54
 AFFIRMED.
 
 
 
 *
 Hon. Howard B. Turrentine, Senior United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In re Tahl, 460 P.2d 449 (Cal.1969), cert. denied, 398 U.S. 911 (1970), disavowed in part by Mills v. Municipal Court, 515 P.2d 273, 286 n. 16 (Cal.1973), and overruled in part by People v. Howard, 824 P.2d 1315, 1339-42 (Cal.), cert. denied, 113 S.Ct. 383 (1992), cited by Carmargo, is not contrary. Tahl discusses the requirement that a California trial court engage in a colloquy with a criminal defendant, similar to the colloquy required by Fed.R.Crim.P. 11. Tahl does not require that the colloquy establish a factual basis for a guilty plea, however
 
 
 [2]
 Quijano also notes that he, like most arrestees, was unable to see his lawyer prior to being booked and that he could not be released unless he was booked. These assertions do not indicate that the booking question constituted interrogation, however. Rather, they emphasize that Quijano was in custody and that, if the question constituted interrogation, breach of law enforcement officers' Miranda obligations is widespread
 
 
 [3]
 In response, the government argues that a district court's ruling on a motion for a suppression hearing is reviewed for abuse of discretion. United States v. Mejia, 953 F.2d 461, 465 (9th Cir.1991), cert. denied, 112 S.Ct. 1983 (1992). The government claims Quijano has not shown an abuse of discretion. The government also claims the motion was moot because the government never used the statement