**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose BECERRA; Salvatore Larizza; Gabriel Becerra, Defendants– Appellants.**

**Nos. 92–30105, 92–30112 and 92–30115.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1993.

Decided May 5, 1993.

As Amended July 16, 1993.

Robert W. Goldsmith, Seattle, WA, for defendant-appellant Jose Becerra.

Malcolm L. Edwards; Catherine W. Smith, Edwards, Sieh, Wiggins & Hathaway, Seattle, WA, for defendant-appellant LaRizza.

Santiago E. Juarez, Seattle, WA, for defendant-appellant Gabriel Becerra.

Kenneth G. Bell, Asst. U.S. Atty., for plaintiff-appellee.

Before: WRIGHT, CANBY and REINHARDT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

A 14–month undercover investigation of suspected organized crime in the Puget Sound region led to the arrest of Gabriel and Jose Becerra and Salvatore LaRizza for cocaine and heroin conspiracy. A jury convicted LaRizza of distribution of and conspiracy to distribute cocaine and heroin and interstate travel in aid of racketeering. The Becerras pleaded guilty to one count of conspiracy to distribute cocaine. The district court sentenced all three to 20–year statutory mandatory minimum sentences. LaRizza appeals his conviction and sentence. The Becerras appeal their sentences. We reverse LaRizza's conviction because the district court did not instruct the jury on entrapment. We affirm Gabriel Becerra's sentence but reverse Jose Becerra's sentence and remand for resentencing because the court erroneously determined his base offense level.

**I**

Although the parties disagree about many of the facts, the following is undisputed. In early 1990, the FBI and the Seattle Police Department began investigating organized crime in the Puget Sound area. In an attempt to infiltrate Seattle's Colacurcio family, well-known to law enforcement for involvement in criminal activity, Detective Richard O'Donnell posed as Joey Castellano, son of a New York mobster and an all-around "wise-guy." One of the targets of the investigation, Robert Payton, introduced O'Donnell to Salvatore LaRizza at a Seattle restaurant where LaRizza worked as a waiter. At trial, LaRizza testified that Payton told him to give "Joey" special treatment because he was a "big mobster from New York."

Two months after their first meeting, O'Donnell gave LaRizza and Angela, a paid police informant, a ride home from a party. After Angela mentioned that LaRizza had a cocaine connection, O'Donnell asked LaRizza if he could get some cocaine. This is where the parties begin to disagree about the facts. O'Donnell testified that LaRizza replied that he would talk to his connections in California.

LaRizza testified that he said he knew a drug dealer, but warned that drug dealing was "no good."

O'Donnell also testified that during the next several months he asked LaRizza from 10 to 15 times whether he had contacted his source and LaRizza replied that he was still trying. LaRizza, on the other hand, said O'Donnell pestered him almost constantly, visiting him at the restaurant 44 times in a three-month period. He claimed that he did not intend to deal drugs and kept trying to discourage O'Donnell by saying that his source was unavailable.

Finally, early in 1991, LaRizza agreed to set up a deal. He testified that he did so because he was afraid O'Donnell was a Mafioso who would kill him or someone in his family if he did not cooperate. He also claimed that O'Donnell induced him into the deal by offering him a business partnership. O'Donnell denied saying that he was in the Mafia and contended that he acted only as a street-wise New Yorker who acknowledged knowing some Mafia members.

The two flew to San Francisco on March 3. No deal was made, but LaRizza told O'Donnell he had contacted his source. Two weeks later, the two returned to the Bay area. LaRizza made arrangements for O'Donnell to buy a kilo of cocaine from the Becerras. LaRizza testified that O'Donnell gave him $1000 for his participation. O'Donnell testified that LaRizza took the $1000 out of the $22,000 purchase price.

On April 21, the two again traveled to the Bay area, this time to Oakland. LaRizza arranged another drug deal between O'Donnell and the Becerras for a kilo of cocaine and an ounce of black tar heroin. O'Donnell paid for both trips.

In between the two deals, O'Donnell asked LaRizza if his source could supply 25 kilos of cocaine a month. O'Donnell testified that LaRizza responded "yes." On May 13, the two drove from Seattle to Oakland. LaRizza claimed that he never intended to set up a 25–kilo deal and was trying to figure how to get away from O'Donnell. O'Donnell, on the other hand, said that, after arriving in Oakland, LaRizza left their hotel to contact his source. He returned that evening, telling

O'Donnell that the deal was set. O'Donnell said he could not deal because of the late hour. Agents arrested LaRizza and the Becerras the next day. No drug deal occurred. No drugs were discovered on them or at the Becerras' residences.

The government charged all three in a superseding indictment. LaRizza moved for a continuance and for public funds for a tape transcriber to transcribe undercover recorded conversations between himself and O'Donnell. The court denied both motions.

On the first day of trial, the Becerras pleaded guilty to conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. LaRizza went to trial and raised the defenses of entrapment and duress but, after hearing all the evidence, the court declined to instruct on them. The court also did not allow LaRizza's witnesses to testify about O'Donnell's threatening behavior and the Mafia domination of LaRizza's home town.

A jury convicted LaRizza on all counts: conspiracy to distribute cocaine and heroin, 21 U.S.C. §§ 812, 841(b)(1)(C) and 846; distribution of cocaine and heroin, 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(B); and interstate travel in aid of racketeering, 18 U.S.C. §§ 1952(a)(3) and 2. At sentencing, the court found that the proposed third deal was part of an ongoing scheme in which all three defendants were involved. It then used the 25–kilogram amount to calculate their sentences. Because all three had prior felony drug convictions, the court sentenced them to the statutory mandatory minimum of 20 years imprisonment followed by 10 years supervised release. *See* 21 U.S.C. 841(b).

## II

### A. *Refusal to Instruct on Entrapment*

■ There is a split of authority in this circuit concerning the appropriate standard of review (de novo or abuse of discretion) of a district court's decision not to instruct a jury on the defendant's theory of the case. *United States v. Sotelo–Murillo*, 887 F.2d 176, 179–80 (9th Cir.1989). We need not address this issue, however, because we conclude that

under either standard the trial court's decision not to instruct was erroneous.

■ A defendant is entitled to an entrapment instruction if he can present some evidence that a government agent induced him to commit a crime that he was not predisposed to commit. *Id.* at 179. Only slight evidence will create the factual issue necessary to get the defense to the jury, even though the evidence is " 'weak, insufficient, inconsistent, or of doubtful credibility.' " *Id.* at 178; 179 (quoting *United States v. Yarbrough*, 852 F.2d 1522, 1541 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988)). If the trial court finds that the evidence presents no genuine dispute about whether the defendant was entrapped, there is no factual issue for the jury, and the court must deny the instruction. *United States v. Rhodes*, 713 F.2d 463, 467 (9th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983). The failure to give an entrapment instruction, where one is required, is reversible error. *United States v. Escobar de Bright*, 742 F.2d 1196, 1201 (9th Cir.1984).

Inducement must be provided by someone acting for the government. *United States v. Smith*, 924 F.2d 889, 898 (9th Cir.1991). In evaluating predisposition, we examine five factors:

(1) the character or reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement.

*United States v. Citro*, 842 F.2d 1149, 1152 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988). Although none of these factors alone controls, the most important is the defendant's reluctance to engage in criminal activity. *Id.*

LaRizza argues that he presented sufficient evidence to entitle him to an entrapment instruction. He testified that O'Donnell induced him to commit the drug deals through the use of intimidation, threats against his family, promises of money and assurances that the two would start a busi-

ness together. Although he had a prior cocaine conspiracy conviction, he testified that it was O'Donnell and Angela who first suggested a drug deal. O'Donnell verified that Angela made the initial suggestion. LaRizza and his boss testified that he was a hard worker trying to put his conviction behind him. LaRizza testified further that he did not want to deal and repeatedly tried to discourage O'Donnell, but finally relented after 10 months because he feared O'Donnell and his contacts. LaRizza made $1000 profit on the first transaction.

The government introduced evidence suggesting that LaRizza was predisposed. On cross examination, he admitted involvement in numerous cocaine transactions during the mid–1980s. Those, however, occurred before his first conspiracy conviction. He testified that after his release from prison he had no intention of further involvement with drugs. The government also argues that LaRizza was predisposed because he, not O'Donnell, took all the actions necessary to transact the deals with Gabriel Becerra. This does not prove predisposition. LaRizza testified that he engaged in the transactions only after O'Donnell's repeated requests.

The district court refused to instruct on entrapment because it found no evidence of either inducement or lack of predisposition. The court erred. Although it may have viewed LaRizza's testimony as incredible or weak, he did provide some evidence of entrapment. The weight and credibility of the conflicting testimony are issues that the jury, not the court, should have resolved. Therefore, we must reverse LaRizza's conviction. If he is retried, the district court will instruct the jury on entrapment.

## B. *Refusal to Instruct on Duress*

█ A defendant is not entitled to a duress instruction unless he establishes a prima facie case of three elements:

(1) an immediate threat of death or serious bodily injury;

(2) a well-grounded fear that the threat will be carried out; and

(3) lack of a reasonable opportunity to escape the threatened harm.

*United States v. Beltran–Rios,* 878 F.2d 1208, 1213 (9th Cir.1989); *United States v. Jennell,* 749 F.2d 1302, 1305 (9th Cir.1984), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985). Fear alone is not enough to establish a prima facie case of duress; the defendant must establish all three elements. *Jennell,* 749 F.2d at 1305.

LaRizza testified that O'Donnell threatened to "take care of" LaRizza's family if the deal did not go through. LaRizza thought that this meant O'Donnell would kill a family member. He said that he did not go to the police because he feared he or his family would be harmed if O'Donnell learned of it. He also testified that O'Donnell was in the restaurant almost constantly, often for six to seven hours a day. According to LaRizza, O'Donnell even parked outside LaRizza's apartment on one of his days off.

LaRizza did not present a prima facie case. He may have legitimately feared that O'Donnell would harm him or his family, but that is not enough. He did not show an immediate threat. *See United States v. Karr,* 742 F.2d 493, 497 (9th Cir.1984). Nor did he show that he had no reasonable opportunity to escape any threatened harm during the year-long period he and O'Donnell spent time together. *See United States v. Keller,* 902 F.2d 1391, 1395 (9th Cir.1990) (failure to show no reasonable opportunity to escape when seven bank robberies occurred over 21–month period). The district court did not err in refusing to instruct on duress.

## C. *Exclusion of Evidence Regarding Threats, Promises & Illegal Acts*

LaRizza argues that the court erred in excluding third-party testimony about threats, promises and allegedly illegal acts of Detective O'Donnell. LaRizza offered this evidence to support his defenses of duress and entrapment and to impeach O'Donnell's testimony. The district court excluded the evidence as irrelevant and, even if relevant, as a waste of time. Much of this evidence is relevant to LaRizza's entrapment defense.[1]

---

1. The evidence would not have aided LaRizza, however, in establishing a prima facie case of duress. He made no showing that he lacked an opportunity to escape the threatened harm.

If the case is retried and an entrapment instruction given, the district court should admit that evidence relevant to LaRizza's entrapment defense.

### D. *Exclusion of Evidence Regarding Mafia Influence in LaRizza's Hometown*

The court refused to admit the testimony of Bruno Tassoni who would have talked about Mafia activities in Serra San Bruno, the Italian town where he and LaRizza grew up. Tassoni would have testified about why one who had lived there would fear a purported Mafioso. The district court may want to reassess the admissibility of this evidence in light of an entrapment instruction.

### E. *Denial of Request for Impeachment Information of Government Informant*

LaRizza claims that the court erred in denying his motion for discovery of impeachment material on the government informant, Angela. At trial, O'Donnell testified that Angela had told him, in LaRizza's presence, that LaRizza knew of a source of cocaine. She did not testify. LaRizza sought to attack her credibility with any information that the government had on her prior statements, criminal convictions and compensation as a paid informant.

Federal Rule of Evidence 806 permits attacks on the credibility of the declarant of a hearsay statement as if the declarant had testified. The court denied the motion, apparently because it believed incorrectly that, under the Rule, the declarant was the witness, O'Donnell, not the informant, Angela. Although the court's reasoning was wrong, the result, which we affirm, was right. *See United States v. Telink, Inc.*, 910 F.2d 598, 600 n. 1 (9th Cir.1990) ("We may affirm on any ground fairly supported by the record.").

The court did not err in denying LaRizza's motion. Angela's statement was not hearsay because it was not admitted for its truth but as foundation for LaRizza and O'Donnell's discussions about cocaine. *See* Fed.R.Evid. 801(c). Even if admitted for its truth, the statement was an adoptive admission, which is not hearsay. *See United States v. Monks*, 774 F.2d 945, 950 (9th Cir.1985); Fed.R.Evid. 801(d)(2)(B). Rule 806 does not apply.

### F. *Denial of Motion for Continuance and Government–Funded Tape Transcription*

LaRizza contends next that the court erred by denying his motions for a government-funded transcript of tape recorded conversations between himself and O'Donnell and for a continuance to examine the tapes. We review for abuse of discretion. *United States v. Smith*, 893 F.2d 1573, 1580 (9th Cir.1990) (funds for investigative services); *United States v. Robinson*, 967 F.2d 287, 291 (9th Cir.1992) (continuance). Because we remand for a new trial, we need not reach the argument that the court erred in denying the continuance.

To challenge successfully the court's denial of public funds under 18 U.S.C. § 3006A(e), LaRizza must show that the lack of transcription services denied him effective assistance of counsel. *See United States v. Fields*, 722 F.2d 549, 551 (9th Cir.1983), *cert. denied*, 466 U.S. 931, 104 S.Ct. 1718, 80 L.Ed.2d 189 (1984). He must make a two-fold showing: (1) that reasonably competent retained counsel would require the transcription services for a client who could pay for them and (2) that the lack of services prejudiced his defense. *See id.* Prejudice must be shown by clear and convincing evidence. *See United States v. Sims*, 617 F.2d 1371, 1375 (9th Cir.1980); *United States v. Sanders*, 459 F.2d 1001, 1002 (9th Cir.1972).

LaRizza does not make the appropriate showing. First, as the government notes, reasonable retained counsel probably would not have transcribed all of the tapes. He would compare the recording dates with the events of the investigation and then listen to the individual tapes to determine their relevance before transcribing them. Second, LaRizza fails to demonstrate prejudice by

clear and convincing evidence. In his motion for funds, he merely concludes that the tapes will be helpful to his defense. He does not demonstrate with any particularity how they would have aided him. · Even on appeal, he makes conclusory statements, not the required showing of prejudice. The district court did not err in denying funds for transcripts.

### G. *Admission of Prior Bad Acts*

Finally, LaRizza argues· that the court erred in allowing the government to present evidence that he bet on football games, discussed a money-laundering scheme and was involved in uncharged drug transactions. He contends that the evidence involved collateral matters and was highly prejudicial. Because we reverse LaRizza's conviction on other grounds, we need not reach this issue.

### III

Next, we address the Becerras' contention that the district court erred in sentencing them to 20–year terms. First, they argue that the evidence was insufficient to support a finding that each "knew or could reasonably foresee" that LaRizza would negotiate a 25–kilogram deal or that each had agreed to a conspiracy of that scope. Second, they contend that the court improperly relied on evidence received in LaRizza's trial when determining their sentences. Finally, they argue that the court did not make specific individualized findings in determining that their level of involvement encompassed all the cocaine LaRizza negotiated to deliver.

### A. *Standard of Review and Burden of Proof*

■■■ We review de novo a district court's interpretation and application of the Sentencing Guidelines. *United States v. Navarro*, 979 F.2d 786, 788 (9th Cir.1992). Its factual findings are reviewed for clear error. *United States v. Blaize*, 959 F.2d 850, 851, (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992). The quantity of drugs is a sentencing issue addressed after proof of a defendant's guilt. *United States v. Harrison–Philpot*, 978 F.2d 1520, 1523 (9th Cir.1992). The government

has the burden of presenting evidence sufficient to enable the sentencing court to determine the base offense level. *Id.* at 1522. The court must find that the government has met its burden with regard to each transaction used to calculate the base offense level. *Navarro*, 979 F.2d at 788. The burden of proof is ·preponderance of ·the evidence. *United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir.1990).

### B. *Determining the Quantity of Drugs for Sentencing*

■■■ ▪ Under the Guidelines, each con-̣ spirator may be sentenced only for the quantity of drugs that he reasonably foresaw would be distributed or that fell within the scope of his own agreement with his co-conspirators. *United States v. Petty*, 982 F.2d 1374, 1376 (9th Cir.1993); *Navarro*, 979 F.2d at 788. The amount of drugs that a defendant negotiates to sell, where supported by the record, may be considered as relevant conduct for determining the base offense level even if the drugs are never produced. *See, e.g., United States v. Bradley*, 917 F.2d 601, 604 (1st Cir.1990); *cf. United States v. Molina*, 934 F.2d 1440, 1451–52 (9th Cir. 1991) (U.S.S.G. § 2D1.4 allows sentencing court to consider amount under negotiation in cases of partial distribution). ᛫

■■■ The sentencing court may adopt the factual findings of the presentence report but may not adopt conclusory statements unsupported by the facts or the Guidelines. *Navarro*, 979 F.2d at 789. It may consider testimony received at a co-conspirator's trial, where that testimony supplied the basis for facts in the defendant's presentence report. *United States v. Notrangelo*, 909 F.2d 363, 364–66 (9th Cir.1990).

### 1. Gabriel Becerra

■■■ The court did not err in sentencing Gabriel on the basis of 25 kilograms. The presentence report details numerous communications and meetings between Gabriel and LaRizza during the latter's discussions with O'Donnell about a third deal. The timing and nature of Gabriel's activities, as detailed in the presentence report, provide a sufficient basis for the court to have found that Gabriel participated in negotiations for the 25

kilograms or that he knew or reasonably should have foreseen that such an amount would be negotiated. In addition, the court relied on evidence presented at LaRizza's trial to find that Gabriel had been a party to the negotiations for the larger amount. At sentencing, Gabriel's attorney did not object to the court's use of this evidence.

### 2. Jose Becerra

The level of Jose's involvement is not as clearly detailed in the presentence report. The first identifiable reference to Jose appears when he was arrested. The government argues that two references to an "unidentified Latin male" refer to Jose, but this is not stated in the report. The government argues also that telephone calls Gabriel made to Jose's girlfriend's house tie Jose to the negotiations. The presentence report, however, contains no evidence showing who received the calls or even that Jose was present when they were received. The report has no facts on which the court could have based a finding that Jose knew about or could reasonably foresee the 25–kilogram transaction. Even if the district court relied on testimony received at LaRizza's trial, there were no additional facts presented there to support this finding. It erred in sentencing Jose based on the 25–kilogram amount.[2] Consequently, we remand for re-sentencing based on Jose's distribution of two kilograms of cocaine.

**REVERSED** in part, **AFFIRMED** in part and **REMANDED** in part.

**2.** We reject the government's argument that sentencing under the statutory mandatory minimums should differ from the Guidelines. The government maintains that the language of 21 U.S.C. § 841(b) allows a court to sentence a defendant based on the amount of cocaine "involved" in an offense, rather than assessing an individual defendant's level of responsibility. That section says:

In the case of a violation of subsection (a) of this section *involving* ... 5 kilograms or more of a mixture or substance containing a detectable amount of ... cocaine ... such person shall be sentenced to a term of imprisonment which may not be less than ... 20 years [if he

has a prior conviction for a felony drug offense].

21 U.S.C. § 841(b)(1)(A) (emphasis added). We see no reason why sentencing under the statutory mandatory minimums should differ. They are, in essence, part of the Guidelines scheme. *See* United States Sentencing Commission, *Guidelines Manual*, § 5G1.1(b). Accordingly, the government still must show that a particular defendant had some connection with the larger amount on which the sentencing is based or that he could reasonably foresee that such an amount would be involved in the transactions of which he was guilty.