UNITED STATES of America

v.

**Eugene Edward GADSON.**

**Crim. No. 93–65–4 (CRR).**

United States District Court, District of Columbia.

Aug. 31, 1993.

---

Andrew Levetown, Asst. U.S. Atty., for U.S.

W. Gregory Spencer, Asst. Federal Public Defender, for defendant.

## OPINION

CHARLES R. RICHEY, District Judge.

The Defendant in the above-captioned case pled guilty before this Court to one count of unlawful distribution of 5 or more grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii).[1] On July 15, 1993, the Defendant was sentenced on that one count to 73 months of imprisonment, four years of supervised release and a $50 special assessment. This Memorandum Opinion sets forth the Court's reason for the particular sentence imposed in this case.

1. On April 30, 1993, the Defendant pled guilty to Count 28 of a multi-count indictment.

2. The Sentencing Guidelines do provide certain exceptions, such as a § 5K1 downward departure, where the Court is not bound by the sentencing range as determined by a defendant's Criminal History Category and the Total Offense

## I. BACKGROUND

The Defendant in this case was charged with, *inter alia,* four counts of distribution of cocaine base. The Defendant pled guilty to count 28, which charged the Defendant with distribution of cocaine base on January 13, 1993. At the sentencing, the Government dismissed the remaining counts in the Indictment against the Defendant, including three other counts alleging distribution of cocaine base on January 8, 11, and 15, 1993.

Sentencing in this case is governed by the Sentencing Reform Act of 1984 and the United States Sentencing Commission Guidelines. The Commission Sentencing Guidelines provide a comprehensive system for determining the proper sentencing range in a federal criminal case, by determining each defendant's Criminal History Category and Total Offense Level.[2] All parties agreed in this case that Defendant's Criminal History Category in this case was II. However, the parties disagreed as to the appropriate Total Offense Level was in this case.

The Government contended that the Defendant's Base Offense Level was 32 when considering the total amount of drugs allegedly involved in the four distributions contained in the Indictment as "relevant conduct" as set forth in Chapter I of the Guidelines. In addition, the Government contended that there should be a two level increase in the Offense Level in this case because the Defendant was allegedly involved in a transaction where guns were exchanged for drugs. Therefore, in the Government's view, with a three level downward adjustment under the Guidelines for Acceptance of Responsibility, the Defendant's Total Offense Level was 31 and the Guideline range for sentencing was 121 to 151 months.[3]

■ However, the Court disagreed with the Government. At the Sentencing Hear-

Level; however, these exceptions were not relevant to this case.

3. The United States Probation Office's position, as set forth in the Presentence Investigation, was the same as the Government regarding the range for sentencing under the Guidelines in this case.

ing, the Court found that the proper Offense Level in this case was 28 based on the amount of drugs involved in the one count for which the Defendant pled guilty. The Court also found that a two point enhancement in the Offense Level for the gun offense charged in a separate count was not appropriate because the Defendant had not pled guilty to this crime. Accordingly, with the aforementioned three point reduction for Acceptance of Responsibility, the Court found that the proper Total Offense Level in this case was 25 with a sentencing range of 63 to 78 months.

## II. *FOR PURPOSES OF SENTENCING, THE COURT DID NOT CONSIDER OTHER ALLEGED DRUG TRANSACTIONS, OTHER THAN THOSE DRUGS FOR WHICH THE DEFENDANT ADMITTED RESPONSIBILITY, BECAUSE THE GOVERNMENT DID NOT LINK THE DEFENDANT TO THESE DRUGS BY A PREPONDERANCE OF THE EVIDENCE.*

The Government argued that, for purposes of sentencing under relevant conduct, the Defendant should be held accountable for his alleged involvement in four separate drug transactions on: January 8, 1993; January 11, 1993; January 13, 1993; and January 15, 1993.[4] More specifically, the Government contended that Offense Level of 32 was proper because the amount of drugs involved with these four transactions totaled 103.34 grams of cocaine base.[5]

The Court did not agree and only held this Defendant accountable for the quantity of drugs related to the January 13, 1993 offense, namely 34.05 grams, for which the Defendant pled guilty. The Court, therefore, only included the amount of drugs for which the Defendant admitted his responsibility and guilt.

Under the Sentencing Guidelines, a court may consider relevant conduct for purposes of sentencing, including all acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." Sentencing Guidelines 1B1.3(a)(2). Therefore, the weight of drugs in conduct for which the Defendant did not admit personal responsibility may be used in some cases for purposes of sentencing. *United States v. Boney,* 977 F.2d 624, 644 (D.C.Cir.1992) (*citing United States v. Salmon,* 948 F.2d 776 (D.C.Cir.1991)). However, when the Government attempts to use relevant conduct for purposes of enhancing a criminal defendant's sentence, due process requires that the Government prove the relevant conduct by a preponderance of the evidence. *United States v. Burke,* 888 F.2d 862, 869 (D.C.Cir.1989); *see United States v. Boney,* 977 F.2d 624, 644 (D.C.Cir.1992).

In this case, the Court found that the Government had not proved, by a preponderance of the evidence, that the Defendant was involved with the drug distributions alleged in the three dismissed counts. The Government did not present any evidence, or even make a proffer of its evidence, establishing that the Defendant was responsible for the three other alleged drug distributions of January 8, 11 and 15, 1993.

The only reference before the Court as to these three alleged drug distributions was contained in the Presentence Investigation Report ("PSI"), which was prepared by the United States Probation Office. However, the Court concluded that the information contained in the PSI in this case was not sufficient to satisfy the Government's burden of proof. The Court is not bound by the PSI where the information contained therein does not have "sufficient indicia of reliability to support its probable accuracy." Sentencing Guidelines § 6A1.3(a); *see United States v. Patterson,* 962 F.2d 409, 415 (5th Cir.1992); *United States v. Wise,* 990 F.2d 1545, 1549–50 (10th Cir.1992). The PSI here set forth information about the three other alleged drug distributions in this case in only the most general terms by merely setting forth the dates and amounts of the alleged drug transactions. It did not contain any specifics

---

**4.** The January 8, 1993 transaction involved 11.25 grams of cocaine base; the January 11, 1993 transaction involved 11.2 grams; the January 13, 1993 transaction involved 34.05 grams; and the January 15, 1993 transaction involved 46.84 grams.

**5.** Under the Sentencing Guidelines, the Base Offense Level for distribution of 103.34 grams of cocaine base is 32. Sentencing Guidelines § 2D1.1(c)(6).

as to the underlying facts or the Defendant's role regarding these three alleged drug transactions, for which the Defendant did not plead guilty and which were dismissed by the Government. The Court may not adopt conclusory statements in a PSI unsupported by the facts. *United States v. Becerra*, 992 F.2d 960, 966 (9th Cir.1993).

■ In addition, while the Court has the utmost respect for the work of the United States Probation Office, it simply cannot take judicial notice of the information contained in the PSI as fully accurate and correct. The Court is particularly opposed to doing so because it knows that the information contained in the PSI is often given to the Probation Department by the Government prosecutors because of the heavy burden upon the Probation Office and its resources. The Court cannot accept unverified facts as true for purposes of a civil case where no liberty interest is involved. *See* Fed.R.Civ.P. 56; Local Rule 108(h). Therefore, the Court concluded that it was improper to deprive a Defendant of his liberty interest based only upon the broadly asserted, unverified information contained in the PSI in this case.

Therefore, for all these reasons, the Court found that the proper Offense Level in this case was 28 based on the 34.05 grams for which the Defendant admitted his guilt. The Court concluded that this satisfies the purposes of the Sentencing Reform Act and the Sentencing Guidelines for purposes of punishment and deterrence while, at the same time, the sentence does not penalize the Defendant for alleged conduct which had not been proved, by a preponderance of the evidence, by the Government.

### III. *A TWO POINT ENHANCEMENT BASED UPON THE PRESENCE OF A FIREARM WAS NOT APPROPRIATE IN THIS CASE BECAUSE THE DEFENDANT'S MERE PRESENCE IN THE CAR DURING A GUN SALE BETWEEN AN UNDERCOVER OFFICER AND A CODEFENDANT WAS NOT ENOUGH TO ESTABLISH RESPONSIBILITY FOR THE CRIME CHARGED BY A PREPONDERANCE OF THE EVIDENCE.*

■ The Sentencing Guidelines provides that a defendant's Offense Level shall be increased by two points where "a dangerous weapon (including a firearm) was possessed." Sentencing Guidelines § 2D1.1(b)(1) (1992). The Government in this case argued that there should be a two point enhancement here because the Defendant allegedly was involved in a transaction with Codefendant Nicholes on January 15, 1993, in which several weapons were received in exchange for cocaine base. The Defendant disputed this enhancement and argued that the evidence here does not support such a finding. The Court agreed with the Defendant and did not permit a two point enhancement in this case.

As discussed earlier, all relevant conduct relied upon by the Government for purposes of enhancing the Defendant's sentence must be proved by a preponderance of the evidence. At the Sentencing Hearing, Police Officer Dale Sutherland testified on behalf of the Government that the Codefendant Nicholes had arranged to receive seven firearms in exchange for two ounces of crack cocaine during a transaction to take place on January 15, 1993. Transcript at 16. According to the Officer, on the date in question, the two Defendants arrived in a car to meet with the Officer. Codefendant Nicholes left the vehicle to discuss the details of the transaction with the officer while the Defendant waited in the car. *Id.* at 17. The Officer then showed Nicholes the guns, which were located in the Officer's van, while the Defendant remained seated in the car. *Id.* at 18, 24. After viewing the guns, the Officer and Nicholes returned to the car. At that time, Nicholes said to the Officer "[g]o ahead and take the drugs now and just set them in the back seat." *Id.* at 20. Nicholes and the Defendant were arrested shortly after Nicholes handed the drugs to the Officer.

The evidence presented by the Government did not link the Defendant here to the guns in question. The evidence before the Court showed that the Defendant never saw or possessed the guns at issue here. *Id.* at 25. Furthermore, there was no evidence that the Officer, or any one else for that matter, ever spoke with the Defendant about these guns. The mere presence of the De-

fendant at the scene where the guns were to be exchanged for the drugs is not enough, standing alone, to constitute responsibility for this conduct. *See United States v. Pardo,* 636 F.2d 535 (D.C.Cir.1980); *United States v. Reid,* 997 F.2d 1576, 1579 (D.C.Cir.1993) (*citing United States v. Staten,* 581 F.2d 878, 884 (D.C.Cir.1978)); *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). Furthermore, the Government's evidence here did not prove that the gun transaction was reasonably foreseeable to the Defendant as within the scope of the agreement or plan with Defendant Nicholes. *See* Sentencing Guidelines § 1B1.3(a)(1)(B) (in a jointly undertaken criminal activity, relevant conduct includes only reasonably foreseeable acts in furtherance of the jointly undertaken activity); *United States v. Ismond,* 993 F.2d 1498, 1499 (11th Cir.1993); *United States v. Becerra,* 992 F.2d 960, 966 (9th Cir.1993); *United States v. Evbuomwan,* 992 F.2d 70, 74 (5th Cir.1993).

 The Government's counsel argued before the Court that the Defendant was aware that the transaction on January 15, 1993, involved guns. However, the Court cannot consider the argument of counsel as evidence for purposes of sentencing. *See United States v. Johnson,* 823 F.2d 840, 842 (5th Cir.1987); *United States v. Hawkins,* 595 F.2d 751, 755 (D.C.Cir.1978), *cert. denied,* 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979); *United States v. Monaghan,* 741 F.2d 1434, 1440 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985). Any enhancement of this Defendant's sentence must be based upon evidence rather than the argument of counsel. Furthermore, Officer Sutherland's testimony did not support the Government's contention as to this issue.

Accordingly, for all these reasons, the Court found that the Government had not proved, by a preponderance of the evidence, that the Defendant knew that the transaction on January 15, 1993, involved the sale of guns.

### IV. *CONCLUSION*

For the reasons explained above, the Court concluded that an Offense Level of 25

was appropriate in this case based upon the amount of drugs for which the Defendant pled guilty. Furthermore, the Court did not enhance the Offense Level by two points because the Government did not prove, by a preponderance of the evidence, that the Defendant was involved with the gun transaction on January 15, 1993. At most, the Government established "mere presence" of the Defendant at the scene of a crime which is insufficient for a conviction, *see United States v. Pardo,* 636 F.2d 535 (D.C.Cir.1980), and certainly insufficient for sentencing as well.