**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

LAJAI JAMAR PRIDGETTE,
*Defendant-Appellant.*

No. 14-30223

D.C. No.
1:13-cr-00281-EJL-1

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, Senior District Judge, Presiding

Argued February 2, 2016
Submitted August 5, 2016
Seattle, Washington[*]

Filed August 5, 2016

Before: Alex Kozinski, Diarmuid F. O'Scannlain
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Kozinski;
Partial Concurrence and Partial Dissent by
Judge O'Scannlain

---

[*] We order this case **SUBMITTED.**

## SUMMARY[**]

---

### Criminal Law

The panel vacated the district court's sentencing order and restitution order and remanded for resentencing on the existing record after the government conceded error.

As to the sentence, the government conceded that the record before the district court did not establish that the defendant served sufficient time in custody to support the assessment of two criminal history points for each of two prior convictions.  The panel declined to follow the usual course when a district court errs in sentencing, and remand for resentencing on an open record, because the government squarely raised its arguments before the district court and tried but failed to prove facts supporting an increased sentence; in other words, there was a failure of proof after a full inquiry into the factual questions at issue.

Judge O'Scannlain concurred in the court's vacatur of the sentence and restitution order and in its remand for resentencing.  He dissented from the court's decision to remand on a closed record because the defendant did not request this remedy.  In addition, Judge O'Scannlain was not convinced that the district court conducted a "full inquiry" into the duration of the defendant's prior sentences.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Dennis Alan Benjamin (argued), Nevin, Benjamin, McKay & Bartlett LLP, Boise, Idaho, for Defendant-Appellant.

Kevin Thomas Maloney (argued) and Marc Haws, Assistant United States Attorneys; Wendy J. Olson, United States Attorney; Office of the United States Attorney, Boise, Idaho; for Plaintiff-Appellee.

**OPINION**

KOZINSKI, Circuit Judge:

We consider whether a remand for resentencing a criminal defendant should be on an open or closed record.

**FACTS**

In 2013, Lajai Pridgette was driving a Mustang on Interstate 84 in southern Idaho.[1] Occupants of two separate vehicles reported that someone had shot at them from inside the Mustang. An Idaho State Trooper tracked down the Mustang, and Pridgette was arrested. While searching the Mustang, Troopers recovered a handgun, a spent shell casing, marijuana and machines used to produce counterfeit credit cards. It was later determined that the Mustang had been rented from Hertz but was not returned on the agreed-upon date.

---

[1] To the extent that we refer here to facts contained exclusively in the PSR, we pro tanto lift the order sealing that document.

Pridgette was charged with transporting a stolen vehicle, being a felon in possession of a firearm, possessing counterfeit credit cards and possessing counterfeiting devices. A jury convicted Pridgette on each count. The district judge sentenced him to 137 months incarceration and ordered him to pay $13,709.16 in restitution to Hertz and the credit card companies.

Senior United States Probation Officer Brent Flock prepared a presentence investigation report (PSR) detailing Pridgette's criminal history. The PSR indicated that Pridgette had been convicted of possessing a controlled substance in 2003. Flock determined that Pridgette's sentence for this offense had been "4 years probation, 60 days jail." Flock also indicated that Pridgette was convicted on a second drug charge in 2004. The PSR represented that Pridgette was sentenced to "5 years probation, 365 days jail" for this offense. The Sentencing Guidelines assign two criminal-history points "for each prior sentence of imprisonment of at least sixty days" but less than one year and one month, and one point for each prior sentence of fewer than 60 days. U.S.S.G. § 4A1.1(a)–(c).[2] Flock assigned two criminal-history points for the 2003 offense and two further points for the 2004 offense.

Pridgette objected to the PSR on the ground that it misrepresented the amount of time he spent behind bars for these two prior offenses. As to the 2003 offense, Pridgette argued that "[n]either the discovery provided by the United

---

[2] The phrase "'sentence of imprisonment' refers only to the portion [of a prison sentence] that was not suspended." U.S.S.G. § 4A1.2(b)(2); *see also United States* v. *Gonzales*, 506 F.3d 940, 943 (9th Cir. 2007) (en banc).

States Attorney nor the materials provided by the Probation Office" showed the duration of his sentence. As to the 2004 offense, Pridgette argued that he had served only 8 days in prison, not 365 days as indicated in the PSR. Flock responded to Pridgette's objections by pointing out that records from the "Sacramento County Superior Court and Sacramento County detention facility [demonstrate] that the defendant was convicted of the offenses and served the custody dates outlined in the [PSR]." The government filed its own response, suggesting that the "documents of record reflect all relevant facts" and that the PSR appropriately summarized "documents obtained by Probation."

Pridgette filed a sentencing memorandum that reiterated his objections, and objected for a third time at sentencing. The district judge decided that "the probation officer's comments adequately address [Pridgette's] concerns and objections" to the PSR, and therefore "adopt[ed] the presentence investigator's response to those objections as [his] own."

In reality, the records from the Superior Court plainly did not confirm the PSR's custody dates. The minute order of the 2003 conviction indicated that Pridgette served only 6 days of his 60 day sentence and that the remainder of the sentence was suspended. Similarly, the minute order of the 2004 conviction indicated that Pridgette served only 8 days of his 365 day sentence. The remainder of that sentence had also been suspended.

At argument before us, the government conceded that the documents from the Sacramento County detention facility are not in the record. Flock represented in the addendum to the PSR that he had given the detention facility documents to

Pridgette's lawyer, but Pridgette's lawyer told us that he had never seen them. The government offered no reason to doubt counsel's representation. Indeed, the government represented that it had never seen the detention facility documents either. The government could not say whether the detention facility documents in fact exist.

Given the government's concession, we allowed the Assistant U.S. Attorney 48 hours to consider whether to confess error. The government responded by filing a letter brief "acknowledg[ing] that this Court cannot affirm" and "request[ing] a remand to allow the district court to consider a more fully developed record on th[e sentencing] issue." We then ordered supplemental briefing as to whether we should remand for resentencing on the existing record or on an open record.

## DISCUSSION

"[A]s a general matter, if a district court errs in sentencing, we will remand for resentencing on an open record." *United States* v. *Matthews*, 278 F.3d 880, 885 (9th Cir. 2002) (en banc). *Matthews* recognized two exceptions. The first applies when "additional evidence would not have changed the outcome." *Id.* at 886. The second applies "where there was a failure of proof after a full inquiry into the factual question at issue." *Id.* The question here is whether Pridgette's case falls within the second of these exceptions.

We have long recognized that a closed remand is appropriate when the government tries but fails to prove facts supporting an increased sentence. *United States* v. *Reyes-Oseguera* is instructive. 106 F.3d 1481 (9th Cir. 1997). The government there sought a sentencing enhancement on the

theory that Reyes-Oseguera had recklessly endangered an officer who was trying to arrest him. *Id.* at 1482. The district judge applied the enhancement after crediting testimony from an agent who reported what another agent had told her about the arrest. We held that the enhancement could not rest entirely on hearsay. *Id.* at 1484. Rather than allowing the government to prove the enhancement with non-hearsay evidence, we remanded with instructions that the district court enter a specific lower sentence. *Id.* at 1482; *see also United States* v. *Ponce*, 51 F.3d 820, 829 (9th Cir. 1995) (per curiam) (vacating sentencing enhancement based on hearsay and remanding for resentencing on the existing record).

We took a similar approach in *United States* v. *Becerra*, 992 F.2d 960 (9th Cir. 1993) (as amended). Becerra contested the base-offense level for sentencing. The government argued that Becerra knew he was moving 25 kilos of cocaine. In fact, the record indicated that Becerra dealt only 2 kilos. *Id.* at 962. The PSR referenced an unknown "Latin male" and documented calls between a conspirator and Becerra's girlfriend. The district judge thought this was sufficient to attribute the full 25 kilos to Becerra and sentenced Becerra at the higher level. *Id.* at 967. We noted that the PSR did not identify Becerra as the "Latin male" and that no concrete evidence linked Becerra to the calls. Rather than giving the government a second chance to provide more details about Becerra's involvement, we remanded with instructions that the district court sentence Becerra at the 2-kilo level. *Id.*

Our latest foray into this corner of criminal law was *United States* v. *Espinoza-Morales*, 621 F.3d 1141 (9th Cir. 2010). We held there that the defendant's appeal fell within the second exception to *Matthews*. "[T]he government

submitted evidence to establish that Espinoza's convictions constituted crimes of violence under the modified categorical approach, but it failed to submit evidence sufficient to meet its burden." *Id.* at 1152. We therefore "decline[d] to give the government a second bite at the apple." *Id.*

When contrasted with *Matthews*, the import of these cases becomes clear. In *Matthews*, the district court applied the Armed Career Criminal enhancement in reliance on a PSR representing that Matthews had at least three qualifying state convictions. 278 F.3d at 883. But neither the PSR nor the government's briefing identified what state statutes had been violated. We reversed the district court's order applying the enhancement because it "failed to analyze the statutes" and therefore did not make the required determination as to "whether they satisfied the elements of a 'generic burglary.'" *Id.* at 884. We explained that the second exception to the default rule did not apply because "there was no offer of proof regarding the state statutes under which Matthews was convicted." *Id.* at 887. *Matthews* thus was not a case "in which the district court considered the relevant factual question, but erred in its ultimate conclusion." *Id.* at 888. "[T]he district court did not fully consider the relevant factual issue" because its erroneous legal determination "obviated the need to do so."[3] *Id.*; *see also United States* v. *Kuo*, 620 F.3d 1158, 1165–66 (9th Cir. 2010) (remanding for resentencing on an open record because district court's legal error prevented parties from introducing relevant evidence).

---

[3] Similarly, we have often remanded for resentencing on an open record due to intervening legal developments. *See, e.g.*, *United States* v. *Grisel*, 488 F.3d 844, 852 (9th Cir. 2007) (en banc); *United States* v. *Crawford*, 372 F.3d 1048, 1062 (9th Cir. 2004).

A "full inquiry into the factual question at issue" occurs when the government squarely raises its arguments before the district court and has a fair opportunity to present evidence in support of its proposed sentence. If the government fails to meet its burden of proof even when given such an opportunity, we may remand for resentencing on the existing record. *See Espinoza-Morales*, 621 F.3d at 1152; *Reyes-Oseguera*, 106 F.3d at 1484; *Ponce*, 51 F.3d at 829; *Becerra*, 992 F.2d at 967. But when the government does not have occasion to tender a fully developed argument, we remand for resentencing on an open record. This may occur when a district court's erroneous legal ruling prevented the government from introducing relevant evidence or when intervening case law has altered the legal landscape in such a way as to require further fact-finding.[4]

Pridgette's case is not like *Matthews*, where "there was no offer of proof" regarding the facts underlying the proposed sentence. *Matthews*, 278 F.3d at 885. The government made an offer of proof and argued that the length of the prior convictions could be determined by reference to the state-court minute orders, many of which were placed into the district court record. The government also relied on the phantom detention facility documents. Given that Pridgette

---

[4] Our dissenting colleague suggests that we should determine whether there has been a "full inquiry" based on whether the district court offered an "explanation" for its decision. Partial Dissent at 19. That view cannot be squared with our precedent. None of the cases discussed above referred to the thoroughness of the district judge's explanation as a relevant factor in determining whether there had been a "full inquiry." And this makes sense: Inquiry does not require explanation. If a particular argument has been fairly presented to the district court, the fact that the district judge fails to thoroughly discuss that argument does not deprive the government of an opportunity to participate in a "full inquiry."

specifically objected to the proposed sentence on three separate occasions, the government was on notice of the factual deficiencies in its papers.[5]   It had numerous opportunities to supplement the record by introducing documents that would have corroborated its account of Pridgette's criminal history.  The government chose not to do so, preferring to rest on evidence that it later conceded was insufficient to support its position.

Our conclusion draws support from *United States* v. *Flores*, 725 F.3d 1028 (9th Cir. 2013), where we vacated a sentencing enhancement for use of a person under the age of 18 in furtherance of a drug conspiracy.  We found the record inconclusive as to whether the co-conspirator was underage at the relevant time and remanded for resentencing on an open record.  *Id.* at 1040–43.  We concluded that there had not been "a full inquiry into the factual question at issue" because the sentencing enhancement was "imposed sua sponte by the district court at the sentencing hearing."  *Id.* at 1043.  The district judge applied the enhancement "before [it] heard argument from the government," and the government "did not present any evidence in support of the district court's finding."  *Id.*

In contrast to *Flores*, the government here had the opportunity to present its case.  The government argued in favor of an elevated criminal-history category in an extensive

---

[5] The government argues that the district court's sentencing error is understandable given that Pridgette raised a "multitude" of objections to the PSR.  The fact that Pridgette raised numerous objections does not excuse the district court from its obligation to evaluate each objection on its own merits or the government from presenting a full case that meets the defendant's objections.

pre-sentencing memorandum filed with the district court. In support of its argument, the government attached a blizzard of state-court records and documents obtained from the probation office. At sentencing, the government pressed its view that the criminal-history category had been properly calculated. By the government's own admission, the inquiry into Pridgette's criminal history was thorough. The district judge himself indicated that he "ha[d] spent a lot of time thinking about this case." "I have looked at the objections that have been made," he said. "I understand the arguments." Given these comments from the government and the district judge, there can be no doubt that there was a "full inquiry into the factual question at issue."

We applaud the United States Attorney's decision to confess error. The diligence and professionalism of her office are well known to the judges of our court. But our concern today is not merely to correct the specific error that occurred in this case. Rather, we articulate a rule that aligns with our precedent and will help prevent such errors from occurring again. We believe this end can best be achieved by encouraging the government to present a complete record supporting its desired sentence, taking into account the possibility that its view of the law may not be sustained.

Our dissenting colleague claims that we lack authority to remand for resentencing on the existing record because Pridgette didn't explicitly request that remedy. Partial Dissent at 14. The dissent's formalist approach is at odds with both judicial economy and our past practice. We have often remanded for resentencing on a closed record when

justice so requires, including in cases where the defendant didn't expressly request that particular remedy.[6]

When a panel is confronted with an important issue that was not fully addressed in the briefing, our General Orders advise that the panel should order supplemental briefing on that issue. 9th Cir. Gen. Order 4.2 (2016). And that's precisely what we did in this case. Our supplemental briefing order supplied both Pridgette and the government with an opportunity to make arguments regarding the proper scope of remand. The government argued for remand on an open record but did not claim that Pridgette had waived the argument that we should remand for resentencing on the

---

[6] Becerra argued in his Ninth Circuit briefs that there was insufficient evidence to support the district court's finding that he conspired to deliver 25 kilograms of cocaine. Becerra also argued that the district court didn't specify what particular facts it relied upon in reaching its conclusion as to drug quantity. Neither Becerra nor the government ever discussed whether any potential remand should be open or closed. Becerra himself requested a modest remedy: a remand with instructions that the district court "make explicit findings of fact." We nonetheless ordered resentencing on a closed record. 992 F.2d at 967. Similarly, Mauricio Monroy, one of the defendants in the *Ponce* case, requested that his sentence "be vacated and remanded for resentencing." Even though Monroy didn't request a closed remand, we remanded for resentencing on a closed record at the lower criminal-history category. 51 F.3d at 829. The defendant in *Reyes-Oseguera* requested that we vacate his "sentence and remand[] for resentencing before another judge," but said nothing about whether the remand should be open or closed. Yet again, we ordered a closed remand. 106 F.3d at 1484. And in *Espinoza-Morales*, the defendant's briefs requested that we "remand[] for a new sentencing." Six weeks after argument, Espinoza-Morales asked for the first time that we remand for resentencing on the existing record. We granted that request over the government's objection, even though the request was made after the case had been fully briefed and argued. *Espinoza-Morales*, 621 F.3d at 1152.

existing record.  "[I]t is well-established that the government can waive waiver implicitly by failing to assert it." *Tokatly* v. *Ashcroft*, 371 F.3d 613, 618 (9th Cir. 2004) (internal quotation marks omitted); *see United States* v. *Doe*, 53 F.3d 1081, 1082–83 (9th Cir. 1995).  By engaging on the merits only, the government waived waiver.

\*                    \*                    \*

Because the government has conceded that both the district court's restitution order and its sentencing order are not supported by the record, they are both **VACATED**.  This case is **REMANDED** for resentencing on the existing record.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I concur in the court's vacatur of the sentence and restitution order and in its remand for resentencing.  I respectfully dissent from the court's decision to limit the evidence that the district court may consider on remand to that which is in the existing record.

I

A

"The default rule is that 'if a district court errs in sentencing, we will remand for resentencing on an open record—that is, without limitation on the evidence that the district court may consider.'"  *United States v. Flores*, 725 F.3d 1028, 1043 (9th Cir. 2013) (quoting *United States*

*v. Matthews*, 278 F.3d 880, 885–86 (9th Cir. 2002) (en banc)). "We *may* depart from this general rule where additional evidence would not have changed the outcome or where there was a failure of proof after a full inquiry into the factual question at issue." *Id.* (emphasis added) (internal quotation marks omitted). Because departure from the default rule is permissive, not mandatory, I would require the party seeking a closed remand to explain why we should depart from our default rule.

Pridgette did not address this issue *at all* in his opening brief. "We review only issues that are argued specifically and distinctly in a party's opening brief." *Christian Legal Soc'y v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010) (alteration omitted) (quoting *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010)); *see also id.* at 487 ("[W]e won't 'consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.'" (quoting *Miller v. Fairchild Indust., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986))).

"We adhere to this approach for sound prudential reasons." *Loher v. Thomas*, No. 14-16147, — F.3d — (9th Cir. June 17, 2016) (quoting *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*, 383 F.3d 1082, 1091 n.7 (9th Cir. 2004)). "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Id.* (quoting *NASA v. Nelson*, 562 U.S. 134, 148 n.10 (2011)); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."); *Abovian v. INS*, 219 F.3d 972, 981 (9th Cir.

2000) (Wallace, J., dissenting) ("There is a risk that the court, lacking the analysis ordinarily provided by adversarial parties, will reach the wrong conclusion on the merits and create poor precedent . . . .").

Because Pridgette did not argue anywhere in his opening brief that we should order a closed remand, he waived this issue.[1]  The majority does not appear to dispute this conclusion.  Given Pridgette's waiver, we should have declined to address this issue and applied our default rule of remanding for resentencing on an open record.

B

After failing to raise this issue in his opening brief, Pridgette did not mention this issue in his reply brief or at oral argument.[2]  Pridgette did not even object when, after argument, the government confessed error but requested an open remand.  Having failed to argue for a closed remand in his opening brief, in his reply brief, at oral argument, or in a response to the government's letter confessing error, Pridgette was granted a fifth chance to make his request when

---

[1] *Christian Legal Society* explained that, "[w]ithin the opening brief, claims must be clearly articulated in (1) 'a statement of the issues presented for review'; (2) 'a summary of the argument'; and (3) 'the argument' section itself." 626 F.3d at 485 (quoting Fed. R. App. P. 28). In addition, an appellant's brief must include a conclusion "stating the precise relief sought." Fed. R. App. P. 28(a)(9). Pridgette did not include a request for a closed remand in any of these four portions of his opening brief.

[2] Pridgette certainly should have been aware of this issue by the time of oral argument because we ordered the parties to be prepared to discuss *Flores*, which addresses the scope of the remand at some length. *See Flores*, 725 F.3d at 1043.

the panel *sua sponte* ordered him to address this issue in supplemental briefing.**[3]**  I see no need for such solicitude.

Furthermore, I do not see why we should forgive Pridgette's failure to argue this issue in his opening brief but punish the government's failure to develop the record below.**[4]** If we gave Pridgette a fifth chance to argue for a closed remand, should we not also give the government a second chance to meet its burden of proof?**[5]**

---

**[3]** The majority distorts our General Orders when it asserts that, "[w]hen a panel is confronted with an important issue that was not fully addressed in the briefing, our General Orders advise that the panel should order supplemental briefing on that issue." Maj. Op. at 12.  This turns General Order 4.2 on its head.  In reality, that rule provides: "If a panel determines to decide a case upon the basis of a significant point not raised by the parties in their briefs, it shall give serious consideration to requesting additional briefing and oral argument before issuing a disposition predicated upon the particular point."  This is not a general license for judges to disregard the waiver of issues by ordering supplemental briefing. Rather, General Order 4.2 is a reminder that we should not decide a case on the basis of a point that the parties have not briefed.  So, yes, supplemental briefing was appropriate in this case, but only as an alternative to deciding these issues without *any* briefing from the parties. We should have followed the parties' lead and simply declined to address this issue.

**[4]** Judge Kozinski has argued elsewhere that we should not treat parties disparately when they have both defaulted. *See Alvarez v. Tracy*, 773 F.3d 1011, 1024 (9th Cir. 2014) (Kozinski, J., dissenting).

**[5]** The majority concludes that the government itself waived the waiver issue by not addressing it in its supplemental brief.  We ordered the parties to address "whether this case should be remanded for resentencing on an open record or on the existing record" and cited *Matthews*, so the government reasonably could have read our order not to permit an argument that Pridgette waived a request for a closed record.  Even if the government did forfeit such an argument, we used supplemental briefing

II

Even assuming that we should excuse Pridgette's waiver, Pridgette's supplemental brief does not persuasively explain why we should depart from our default rule of an open remand.

Pridgette does not expressly delineate the exceptions to the default rule and fails to address squarely why any of those exceptions should apply in this case. Given Pridgette's citations, he *seems* to argue for the exception based on "failure of proof after a full inquiry into the factual question at issue." *See Matthews*, 278 F.3d at 886. But Pridgette neither explains what constitutes a "full inquiry," nor explains why there was a full inquiry, nor even states that there *was* a full inquiry. He merely argues that the government had the opportunity to meet its burden of proof and does not deserve a second chance to do so now. Seeing no adequate explanation in the briefing from Pridgette of why the exceptions to our default rule should apply in this case, I would remand for resentencing on an open record.

Undaunted by the lack of any convincing argument from Pridgette at any stage, the majority, confident as a "self-directed board[] of legal inquiry and research," manufactures arguments for Pridgette. *But see NASA*, 562 U.S. at 148 n.10; *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant . . . ."). Moreover, it reaches out unnecessarily to establish a prophylactic rule for our circuit because "justice so requires." Maj. Op. at 11–12. Rather than adjudicate the dispute that the

_____

to cure Pridgette's waiver; why not order another round of supplemental briefing to cure the government's waiver?

parties presented to us, the majority decides that, in this case, we must craft a rule to "help prevent" future errors by punishing the government. Maj. Op. at 11. If we are so eager to set broad rules for the circuit, why did we limit the parties to 1500-word supplemental briefs, drafted over two weeks, without the opportunity for responses, and without oral argument? Instead, we should have left this question to the next case and to parties who care enough about this issue to brief it without being ordered to do so.

III

Reviewing the record, I remain unconvinced by the majority's argument that there was a "full inquiry" into the duration of Pridgette's prior sentences. After Pridgette objected to the initial pre-sentence investigation report and the government responded, Pridgette augmented his objections in his sentencing memorandum and then referenced his written objections in passing at the sentencing hearing. The government did not file any written response to the sentencing memorandum and did not respond orally to Pridgette's passing reference to the issue at the hearing.[6]

---

[6] The majority asserts that Pridgette "objected for a third time at sentencing." Maj. Op. at 5. It conveys the impression that Pridgette actually argued about this point at the sentencing hearing. He did not. His counsel simply referenced his prior briefing: "I will stand on my previous briefing about why I think the criminal history level is actually no higher than five and that the offense level is no higher than 20." Similarly, a reader of the majority's opinion would be forgiven for thinking that the district judge was discussing the appropriate criminal history category when he said that he "ha[d] spent a lot of time thinking about this case." Maj. Op. at 11. He was not. In context, it is clear that the district judge was talking about the case generally. Finally, the majority asserts that the government "pressed its view that the criminal-history category had been properly calculated" and "admi[tted that] the inquiry into Pridgette's

At the hearing, the district court did not explore this issue. It offered no explanation for its decision other than its conclusion that the probation officer had sufficiently addressed the objections in his Addendum. I do not think that this minimal amount of consideration by the court constitutes a "full inquiry" into the factual question at issue. Indeed, a "full inquiry" necessarily requires a modicum of "inquiry." While perhaps the government is partly responsible for the lack of a full inquiry, that does not change the fact that there was no such inquiry.

The majority's prophylactic rule does not require any "inquiry" as part of a "full inquiry" into the factual question at issue. According to the majority, a full inquiry occurs when the government has a "fair opportunity" to present evidence and "squarely raises its arguments before the district court." Maj. Op. at 9. In other words, the district court need not inquire into the factual question at issue so long as the government has had a chance to address such question.

While this might be a good rule to encourage the government "to present a complete record supporting its desired sentence," Maj. Op. at 11, I am not convinced that we must establish prophylactic rules for the Department of Justice at the expense of a fully informed determination of the appropriate sentence for defendants. Like the exclusionary rule in the Fourth Amendment context, the majority's prophylactic rule will "generate[] substantial social costs," including setting shorter sentences for dangerous convicted felons on the basis of incomplete evidence. *See Hudson v.*

---

criminal history was thorough." Maj. Op. at 11. It did not. *All* it said about the criminal history category was: "I believe that Criminal History Category VI was also correctly calculated."

*Michigan*, 547 U.S. 586, 591 (2006) (internal quotation marks omitted). Given the rule's "costly toll upon truth-seeking and law enforcement objectives," we should be more cautious in establishing and applying it. *See id.* (internal quotation marks omitted); *see also id.* ("Suppression of evidence . . . has always been our last resort, not our first impulse.").

"The process of criminal sentencing is not a game between the government and criminal defendants, in which one side or the other gets penalized for unskillful play. The goal of sentencing is to determine the most appropriate sentence in light of the characteristics of the crime and the defendant." *United States v. Matthews*, 240 F.3d 806, 823 (9th Cir. 2000) (O'Scannlain, J., dissenting), *on reh'g en banc*, 278 F.3d 880 (9th Cir. 2002). Unfortunately, the majority loses sight of these principles and seeks to penalize the government to satisfy its own conception of justice.

I respectfully dissent.